**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-CR-35 (EGS)** |
| | : | |
| **MICHAEL JOHN LOPATIC, SR.** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Michael John Lopatic Sr., be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). The Court should order the defendant detained pursuant to 18 U.S.C. § 3142(e) because there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required and ensure the safety of any other person and the community.

## PROCEDURAL HISTORY

On January 29, 2021, a federal grand jury sitting in Washington, D.C. returned an Indictment, charging the defendant Michael John Lopatic, Sr. for his role in the riot at the United States Capitol on January 6, 2021.  The defendant was charged with: one count of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); two counts of Civil disorder, in violation of 18 U.S.C. § 231(a)(3); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); one count of

engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); and one count of violent entry and disorderly conduct in a Capitol building, in violation of 40 U.SC. § 5104(e)(2)(F).

The defendant was arrested at his home in Lancaster County on February 3, 2021.   On February 5, 2021, the defendant had his initial appearance in the Eastern District of Pennsylvania, and the United States moved for detention.   Following a detention hearing on February 9, 2021, Magistrate Judge Henry S. Perkin granted the government's motion for the defendant's detention. The defendant was committed to the District of Columbia and transferred to the District of Columbia.   On March 29, 2021, at the defendant's initial appearance in the District of Columbia, the United States moved again for the defendant to be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2).

## FACTUAL BACKGROUND

This Court is already familiar with the factual background related to the attack on the U.S. Capitol that occurred on January 6, 2021. We proffer additional evidence as it relates to the defendant's conduct leading up to January 6, 2021, and from that day:

*The Defendant's Statements Prior to January 6, 2021*

The defendant's own words expressed through social media in the weeks leading up to the riot show that his actions at the Capitol on January 6, 2021 were not spontaneous.   Immediately following the November election of now-President Joseph R. Biden, Jr. and now-Vice President Kamala Harris, the defendant posted to social media that the election was a "Call to Arms."   He also posted a photograph of two dead pheasants, apparently shot by the defendant.   In the caption, he noted that he named the dead birds "Joe and Kamala," a clear reference to President Joseph Biden and Vice President Kamala Harris.

- 2 -

*Exhibit 1*



*Exhibit 2*



In the weeks following the November election, the defendant posted more hunting photographs, accompanied by captions in which he appeared to name the dead birds after Democratic congressional leaders, including then-Senate Minority Leader Chuck Schumer, the Speaker of the House of Representatives Nancy Pelosi, and Representatives Adam Schiff and Jerry

Nadler, both of whom acted as Impeachment managers during the Impeachment of President Donald J. Trump.

*Exhibit 3*



*Exhibit 4*



**Michael J. Lopatic**
November 6, 2020 · 🌐

Another good flush for this pup.  I got her while going low running her mouth.  I called this old bird Nancy.



*Exhibit 5*

- 6 -



Then, days ahead of the riot at the Capitol, the defendant posted to social media and advocated for others to "ASSEMBLE ON THE CAPITAL JANUARY 6, 2021," and pledged, "UNITED WE STAND, GO FORTH AND WE FIGHT."

*Exhibit 6*



*The Defendant's Assaultive Conduct on January 6, 2021*

On January 6, 2021, Metropolitan Police Department ("MPD") Officers C.M., B.M. and A.W. were amongst those MPD officers who were directed to report to the U.S. Capitol to assist the U.S. Capitol Police in their duties to maintain the security of the U.S. Capitol.   At approximately 4:20 pm, C.M., B.M. and A.W., along with their colleagues, walked through the interior tunnel of the U.S. Capitol Building and assumed a post in an archway that provided access to the building's lower western terrace.   All three officers were wearing a full MPD-issued uniform. Their approximate location is denoted below by the red circle.

*Exhibit 7*



From this archway, C.M. saw thousands of individuals, some of whom were throwing and swinging various objects at the officers.   At one point, C.M. saw a group grab another MPD Officer, B.M., and drag him, in a prone position, down the stairs.   C.M. watched as B.M. was engulfed by the violent mob and assaulted.   C.M.'s body worn camera ("BWC") captured B.M. being dragged into the crowd and assaulted, in addition to capturing the assault of C.M.   *See*

Exhibit 8.0, C.M. BWC.   A video posted by Storyful to YouTube[1] also shows how Lopatic assaulted CM, and then proceeded to snatch B.M.'s BWC off of B.M. as B.M. was trying to reach safety in the crowd.   *See* Exhibit 9.

C.M. attempted to come to the aid of B.M. when Lopatic's co-defendants were dragging B.M. into the crowd, but he was stopped by a rioter wearing clothing emblazoned with the emblem of the "Three Percenters."   When C.M. attempted to bypass the rioter by pushing him aside with his baton, the defendant emerged from the crowd, climbed over a handrail, and charged at C.M. The defendant's actions were captured by C.M.'s body worn camera, as can be seen here:

*Exhibit 8.1*                                        *Exhibit 8.2*

   

After the defendant climbed the barricade, he assaulted C.M. by continuously punching him in the head.   The BWC of an officer standing behind C.M. also captured the defendant's

---

1 *Available at* https://youtu.be/aEGthdTzedk.

assault of C.M.   *See* Exhibit 10.0, S.S. BWC.   At one point, the defendant grabbed C.M. by the

head and appeared to hit him with an uppercut:

*Exhibit 10.1*



*Exhibit 10.2*



*Exhibit 10.3*



*Exhibit 10.4*



A photograph taken by a Getty photographer shows C.M. standing in the archway, with a broken face shield, and the defendant standing to the side, immediately after the assault.

*Exhibit 11*



After pummeling C.M., the defendant descended the steps of the Capitol and made his way to B.M., who at the time was surrounded by a group of protesters trying to protect him from the violent mob.   Photographs taken by a Reuters photographer show the defendant as he approached B.M. in the crowd.

*Exhibit 12*



The Storyful video captures the defendant traversing the crowd to where B.M. was located, then shows the defendant reaching through the human shield and stealing B.M.'s body worn camera.   *See* Exhibit 9.

*Exhibit 9.1*



Consistent with the Storyful video, upon his arrest, the defendant admitted to agents with the Federal Bureau of Investigation that he stole B.M.'s body camera and that he disposed of it on his way home to Lancaster County.

## ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

1.  **Nature and Circumstances of the Offense Charged**

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol.   The defendant was involved in some of the most violent assaults on law enforcement officers that occurred on January 6, 2021.   He is facing multiple counts of violating 18 U.S.C. 111(a)(1) and 18 U.S.C. 231(a)(3), which are serious felony offenses.   He showed up to the U.S. Capitol ready for a fight, after having called on others to join him in the fight.   And, on top of being violent, the defendant's behavior was inherently obstructive.

On January 6, 2021, the defendant and others sought to impede the certification of the 2020 Presidential election by invading the U.S. Capitol.   His very presence in Washington that day was obstructive, in that he and others tried to halt a crucial function of our democratic government.   But the manner in which the defendant tried to accomplish those ends is particularly troubling.   Specifically, he and others stormed the Capitol, and in doing so, the defendant attacked one police officer, punching him repeatedly, and then stole the body worn camera of another police officer and disposed of it, destroying what would have undoubtedly been a crucial piece of evidence.   Moreover, the defendant's actions that day were not spontaneous.   Following the November Presidential election, the defendant posted to social media threatening messages about elected leaders in Washington.   Then, days before the riot, he posted a message in which he expressed his intention to gather at the Capitol and to fight.

As Chief Judge Howell has noted, "Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated

efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *United States v. William Chrestman*, 21-mj-218 (ZMF), ECF No. 23, at 16.   Here, the defendant did not just confront or threaten law enforcement officers, he assaulted them and impeded their ability to do their jobs.    Officers C.M. and B.M. and their colleagues could have easily been seriously injured, if not killed, as a result of the defendant's and his co-defendant's actions.[2]    Moreover, the defendant's assault of C.M. and B.M. interfered with officers' ability to come to the aid of a protestor who had been trampled by the crowd, and subsequently died from her injuries.

### 2.  Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As discussed above, the evidence against the defendant includes BWC from numerous different officers and social media video footage. The video evidence is objective and unwavering. The BWC corroborates the assaults seen in the video posted by Storyful, and shows precisely how the defendant assaulted C.M., then proceeded to cross the crowds to steal B.M.'s BWC, depriving the government of critical evidence of the violent attacks on January 6, 2021. Furthermore, photographers from major news media organizations captured moments of the

---

[2]  MPD records indicate that Officer C.M. may have suffered a concussion on January 6, 2021, however it is unclear when the concussion may have been sustained, as C.M. was also assaulted later the same afternoon by an individual with a metal or hard object.

assault and the aftermath in their photographs.    Finally, the defendant was identified by a family member who contacted the FBI after recognizing the defendant in FBI AFO BOLO #133.

In addition, the physical evidence recovered from the defendant's residence, and his own words, corroborate his involvement in the assaults.    Law enforcement executed a search warrant of the defendant's residence when he was arrested, and recovered a recovered a t-shirt with dark stains that said, "I have PTSD Pretty tired of Stupid Democrats Trump 2020," which is consistent with the shirt the defendant is seen wearing in the video and photographs.    Law enforcement also recovered a set of dark colored half finger gloves, and a red hat with "Brothers of the Corps" on it.    Finally, when he was arrested, the defendant acknowledged that he stole an officer's BWC and disposed of it while driving home.    Accordingly, the evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### 3.  Defendant's History and Characteristics

The government recognizes the defendant's lack of criminal history and that many letters of support may be presented on his behalf.    However, the defendant's actions, as demonstrated by his apparent willingness to prepare for and then engage in what he perceived to be a fight, weigh against his release.    The defendant's perceived fight involved assaulting law enforcement officers who were ensuring that Congress was able complete its official business. That the defendant had the foresight to traverse an angry mob to take what would have been a crucial piece of evidence in bringing those who attacked the officers – and the Capitol – to justice shows that he was not merely swept up by the passions of the day.    Rather, the defendant was there to fight, and he had no intention of being held accountable for his actions.    If released, the defendant would have even

more opportunities to unleash violence against those in the government, and to destroy evidence and obstruct the proceedings against him.

### 4. Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy.   The defendant used physical force against one officer, and deprived another officer of one of his critical law enforcement tools.   He did this at a time when the mob outside the lower western terrace was in a frenzied state and was assaulting multiple law enforcement officers.

Moreover, the defendant's social media posts, when viewed in hindsight after his assaultive actions, should give the Court grave concern about the defendant's continuing danger to the community.   On November 4, 2020, one day after the presidential election, the defendant posted, "CALL TO ARMS" on his Facebook account – a harbinger of what was to come.   The defendant's call to arms was placed in context, and his intent can be inferred from a second post on November 4, which showed two dead birds that the defendant referred to as "Joe and Kamala," and bragged about his "two shots, two kills."   *See* Exhibit 2.   As discussed above, these posts were followed by posts of more dead birds – which the defendant disturbingly continued to name after elected officials.   And finally, on January 1, 2021, the defendant celebrated the New Year with a new call to arms, posting on his Facebook account, "ASSEMBLE ON THE CAPITAL JANUARY 6TH, 2021. UNITED WE STAND, GO FORTH

AND WE FIGHT."   *See* Exhibit 6.   The defendant's intent to fight was manifest, and the subject he wished to physically fight was the U.S. government.

Given the defendant's apparent wish to do harm to government officials, as evidenced by the bloodied, dead birds he named after government officials and flaunted on social media, and the fact that he has access to firearms, the defendant continues to pose a threat to members of the community.   He has shown that he will not hesitate to act violently toward those who try to stop him from his desired ends, including even uniformed police officers.   The defendant unquestionably poses a danger to the community.

Finally, the defendant has no ties to the district in which he has been charged and the potential sentence in this case gives him a reason to flee. It is clear then that the defendant is both a danger to the community and a risk of flight.

## <u>CONCLUSION</u>

The defendant has demonstrated a tendency toward violence and a willingness to impede and obstruct the right and lawful function of government.   Considering all of the factors set forth above in light of the substantial sentence the defendant faces, there is no combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community.   He should therefore be detained pending trial.

WHEREFORE, the government respectfully submits that its Motion for Pretrial Detention should be granted.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

By:     _/s/   Colleen D. Kukowski_
COLLEEN D. KUKOWSKI
Assistant United States Attorney
DC Bar No. 1012458
555 4th Street, N.W., Room 9842
Washington, D.C. 20530
(202) 252-2646
Colleen.Kukowski@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

_/s/ Colleen D. Kukowski_
COLLEEN D. KUKOWSKI
Assistant United States Attorney

Date: April 2, 2021