IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : : : : Case No. 21-CR-35 (EGS) | |
| v. | : : | |
| MICHAEL JOHN LOPATIC, SR., | : : | |
| Defendant. | : : | |

**DEFENDANT'S APPEAL OF DETENTION ORDER**

Defendant Michael J. Lopatic, Sr. ("Mr. Lopatic"), by and through undersigned counsel, respectfully moves this Court to review the decision by the Magistrate Judge from the Eastern District of Pennsylvania to grant the Government's motion for pre-trial detention.  In support thereof, Mr. Lopatic states the following:

## I.  BACKGROUND

### A.  Procedural Posture

On February 3, 2021, Mr. Lopatic was arrested in his home in Lancaster County, Pennsylvania, on an arrest warrant issued from the United States District Court for the Eastern District of Pennsylvania in connection with an Indictment charging Mr. Lopatic with one count of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); two counts of Civil disorder, in violation of 18 U.S.C. § 231(a)(3); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); one count of engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); and one count of violent entry and disorderly conduct in a Capitol building, in violation of 40 U.SC. § 5104(e)(2)(F).

On February 5, 2021, Mr. Lopatic had his initial appearance in the Eastern District of Pennsylvania, and the Government moved for detention.  Following a detention hearing on February 9, 2021, Magistrate Judge Henry S. Perkin granted the Government's motion for Mr. Lopatic's detention pending removal to the District of Columbia.  Mr. Lopatic was committed to the District of Columbia and transferred to the District of Columbia.  On March 29, 2021, at Mr. Lopatic's initial appearance in the District of Columbia, the United States moved again for Mr. Lopatic to be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2).

On April 5 and April 6, 2021, a detention hearing was held before Magistrate Judge G. Michael Harvey.  Close to the conclusion of the second day of the hearing, the government, for the first time, asserted that the hearing in the Eastern District of Pennsylvania was a "final hearing" and that Mr. Lopatic needed to appeal Judge Perkin's Order.  A review of the transcript of said hearing seems to suggest that Judge Perkin merely issued a temporary detention order pending removal to the District of Columbia.  The transcript from Mr. Lopatic's detention hearing is attached hereto as Exhibit "A".  In further support of this conclusion, Judge Perkin's noted during the hearing that Mr. Lopatic may raise arguments related to his custody again before this Court. *Id*. at 17:8-13, 18:5-12.  As such, the United States filed another motion for pretrial detention before this Court upon Mr. Lopatic's transfer to the District of Columbia.

In any event, since Judge Harvey has ruled that he is without jurisdiction, Mr. Lopatic seeks review of his detention before this Honorable Court.

## B.    Statement of Facts

On January 6, 2021, Mr. Lopatic travelled to the District of Columbia in order to attend a rally in support of former U.S. President Donald J. Trump.  During these demonstrations, President Trump asked his supporters to march towards the U.S. Capitol Building in protest of

the 2020 presidential elections and "fight" on his behalf.  Alongside thousands of other members

of the crowd, Mr. Lopatic walked to the U.S. Capitol Building and joined in the ensuing attacks

on the U.S. Capitol and Capitol Police officers.

During these attacks, the evidence suggests that Mr. Lopatic participated in physical

altercations with Metropolitan Police Department ("MPD") Officers C.M. and B.M.—two MPD

officers who were directed to report to the U.S. Capitol to assist the U.S. Capitol Police in their

duties to maintain the security of the U.S. Capitol.  Mr. Lopatic's conduct was captured by MPD

body worn cameras and can be seen in one video posted by Storyful to the online video-sharing

platform, YouTube.  As evidenced by the video recordings, Mr. Lopatic engaged in a

confrontation with C.M. and removed B.M.'s body worn camera, but he did not cause any

injuries to any of the MPD officers.  He also did not cause any property damage or injuries to

other individuals.

## II.    ARGUMENT

In its initial briefing in the case in the District of Columbia, the government seemed to

suggest that Mr. Lopatic should be detailed because he had engaged in a crime of violence.

Indeed, the sole evidence adduced from the government consisted of a couple video clips of Mr.

Lopatic on the steps of the Capitol and some Facebook posts of some pheasants he had shot, or,

as the government stated during its argument "brought about the violent end of birds". When

questioned by Judge Harvey, the government stated that Mr. Lopatic was not charged with a

crime of violence but that he should be detained because he is a "flight risk" or there is a "risk

that he would "obstruct justice".  No evidence was presented, however, to support any of these

arguments.

The case is nearly identical in all respects to the case of *United States v. Clayton Ray Mullins* (1:21-mj-233) where Chief Judge Beryl A. Howell addressed the very issues raised by the government and ordered the release of Mr. Mullins.  A copy of the transcript is attached hereto as Exhibit "B".  In relying upon *United States v. Singleton,* 182 F.3d 7 (D.C. Cir. 1999), Chief Judge Howell noted that if the crime charged is not a crime of violence, then 18 U.S.C. 3142(f) cannot be employed to detail a defendant pre-trial.  Chief Judge Howell rejected the government's attempt to do an end-run around 18 U.S.C. 3142.

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq*., a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained. *See* 18 U.S.C. § 3142(a).  The Act establishes procedures for each form of release, as well as for temporary and pretrial detention.  Detention until trial may be imposed when a judicial officer finds one of six circumstances triggering a detention hearing. *See* 18 U.S.C. § 3142(f).  Absent one of these circumstances, detention is not an option. *See*, *e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988).  Further, assuming a hearing is appropriate, the judicial officer must consider several enumerated factors to determine whether conditions short of detention will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).  The judicial officer may order detention if these factors weigh against release.

**A.      18 U.S.C. § 111(a)(1) does Not Constitute a Crime of Violence.**

In its Supplemental Motion for Pretrial Detention, the Government concedes that 18 U.S.C. § 111(a)(1) does not constitute a crime of violence because 18 U.S.C. § 111(a)(1) does not require the use of violent force. *Id*., at 2; *see also United States v. Fernandez*, 37 F.2d 1031, 1033 (11th Cir. 1988).  Nevertheless, the Government argues that the Court must review the factors under § 3142(g) although it is not seeking a hold pursuant to 18 U.S.C. § 3142(f)(a)(A)

4

(Crime of Violence). *See* ECF 40, at 2-3.  In other words, the Government argues that there is a serious risk that Mr. Lopatic will flee because he poses a danger to his community.  This argument is conceptually flawed and should be denied by the Court.

In the case of Mr. Lopatic's co-defendant, Mr. Mullins, the Government advanced a similar argument in support of their motion for pretrial detention.  In that case, Chief Judge Howell rejected the Government's argument and found that the Government did not prove the defendant's flight risk by a preponderance of the evidence and that obstruction was not established under § 3142(f)(2).  In that case, Mr. Mullins was charged with the same criminal offenses as Mr. Lopatic after he was captured by video dragging B.M. down the steps of the U.S. Capitol by his foot.

It is clear that Mr. Lopatic's alleged assault is the only basis in support of the Government's efforts to detain Mr. Lopatic, and that the Government is attempting to embed arguments related to Mr. Lopatic's alleged violence in its request to detain Mr. Lopatic under § 3142(f)(2)(A).  As Chief Judge Howell has previously noted and the Government has conceded, the Government is inexplicably seeking to conflate characteristics that go to dangerousness with characteristics that go to the defendant's risk of flight. *See* <u>Ex. B</u>, at 17:1-6. There is no precedent to support a finding in support of the Government's contention.  In fact, in *U.S. v. Watkins*, the Second Circuit was confronted with a similar argument in which the Government argued that the charged offense bore a significant factual nexus to a crime of violence and, as such, qualified under §3142(f)(1)(E) because the underlying conduct "involve[d]the possession or use of a firearm." 940 F.3d 152, 157 (2nd Cir. 2019).  The Second Circuit stated:

> We reject this interpretation of the word "involves" in § 3142(f)(1)
> as permitting consideration of related, but uncharged, conduct.  Not

> only would this interpretation produce absurd results, but it is also
> demonstrably at odds with Congress' intent.

*Id.* at 164.  When Congress enacted the Bail Reform Act, it intended to limit the availability of

detention hearings to individuals who are actually charged with certain enumerated offenses:

> The committee has determined that whenever a person is *charged*
> with one of these offenses and the attorney for the Government
> elects to seek pretrial detention, a hearing should be held so that the
> judicial officer will focus on the issue of whether, in light of the
> seriousness of the *offense charged*, and the other factors to be
> considered under subsection (g), any form of conditional release will
> be adequate to address the potential danger the defendant may pose
> to others if released pending trial.

S. Rep. No. 98-225, at 21 (emphasis added); *see also U.S. v. Salerno*, 481 U.S., 739, 750 (1987)

("The [Bail Reform] Act operates only on individuals who have been arrested for a specific

category of extremely serious offenses.").

Since Mr. Lopatic has not been charged with a violent offense no consideration should be

given to his purported dangerousness to the community.

**B.      There is No Serious Risk that Michael Lopatic Will Flee or Obstruct Justice.**

The Government's proposition for detention is based on 18 U.S.C. § 3142(f)(2)(A)

(serious risk that such person will flee) or 18 U.S.C. § 3142(f)(2)(B) (serious risk that such

person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to

threaten, injure, or intimidate, a prospective witness or juror). *See* ECF 40, at 1. There is not a

shred of evidence to support either of those arguments.

Mr. Lopatic is not a serious flight risk and there is no serious risk that he will obstruct or

attempt to obstruct justice. 18 U.S.C. §§ 3142(f)(2).  Mr. Lopatic is 57 years old, a retired U.S.

Marine Corps veteran, and a lifelong resident of Lancaster County.  Mr. Lopatic served as a

Marine in combat in Grenada and in Lebanon, and, as a result, received a 100% disabled

retirement from the U.S. Marine Corps.  After his retirement, he returned to Lancaster County

Pennsylvania, where he has led a peaceful and law-abiding life ever since.  Mr. Lopatic has no

connections to any foreign country, and no ability to flee.  In fact, even after the offense

occurred, he remained at his home in Lancaster, Pennsylvania, until his arrest.

Mr. Lopatic has been married to his wife for 34 years and has four children in the

Pennsylvania area.  He has lived in his current home for more than 30 years.  He has no prior

criminal record, and aside from shooting some pheasants during hunting season, has no history

of violence.  Moreover, Mr. Lopatic has several serious physical and mental health issues,

including an inoperable Pituitary Macroprolactinomas, muscular dystrophy, rheumatoid arthritis,

high blood pressure, a thyroid condition and Post Traumatic Stress Disorder as a result of his

deployment to Lebanon, where he was severely injured during a motor explosion, all of which tie

him to his community in Lancaster County where his medical providers are located and where he

obtains his necessary prescription medication.[1]  The numerous letters in support of his release

from pre-trial detention, attached hereto as Exhibit "C", further demonstrate Mr. Lopatic's strong

ties to his community where he is active in his church and frequently provides volunteer services

to those in need.

On January 6, 2021, Mr. Lopatic made the unfortunate and uncalculated decision to

remove B.M.'s body worn camera, which he later discarded during his travels back to Lancaster

County.  Mr. Lopatic has not taken any steps to obstruct justice and there is no basis to assert that

he will make any such efforts if this Court orders his release from detention pending trial.

---

[1] The Center for Disease Control ("CDC") has confirmed that these conditions might expose Mr. Lopatic to a risk of serious injury should he be infected by SARS-CoV-2. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  During the COVID-19 Pandemic, this Court has released dozens of previously detained defendants due to their vulnerability to the virus.  Further, in *Banks v. Booth*, No. 20-cv-849-CKK, the Court has previously found that the D.C. Jail facilities have not provided adequate care for pretrial detainees during the pandemic.

None of this is to suggest that the attack on the Capitol or attempts to obstruct the election of 2020 are excusable; they are not.  However, as the United States Court of Appeals for the D.C. Circuit recently noted: "the specific circumstances that made it possible, on January 6th, for Munchel and Eisenhart to threaten peaceful transfer of power" no longer exist.  In short, the circumstances leading up to January 6th no longer exist.  This fact alone weighs in favor of release.  *United States v. Munchel*, Case No. 21-3010 (D.C. Circuit March 26, 2021) (appended hereto as Exhibit "D").[2]

## III.    CONCLUSION

For the foregoing reasons, Defendant Michael J. Lopatic, Sr., respectfully requests that this Honorable Court convene a hearing to review the decision to detain Mr. Lopatic and order his release.

Respectfully Submitted,

*/s/ Dennis E. Boyle*

Dennis E. Boyle, Esquire
Blerina Jasari, Esquire
Attorneys-at-Law
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com
          bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Counsel for Defendant*

---

[2] In many ways, the conduct of Mr. Munchel and his mother, Ms. Eisenhart, was more serious than the conduct engaged in by Mr. Lopatic.  As the government concedes, Mr. Lopatic did not commit a crime of violence, and he left the altercation within seconds.  He never entered the Capitol.  Mr. Munchel, by contrast, actually entered the Capitol with a taser, and his mother possessed zip-ties.  If they were ordered released, then Mr. Lopatic should be released as well.