**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-CR-35-3 (EGS)** |
| | : | |
| **MICHAEL JOHN LOPATIC, SR.** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL OF
DETENTION ORDER**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this response to the defendant's Appeal of Detention Order.   The government respectfully opposes the Defendant's motion and asks that the defendant, Michael J. Lopatic Sr., remain detained pending trial.   The evidence in this case shows that there is a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.   Furthermore, the evidence shows that the defendant is a danger to the community and to others.   Because defendant Lopatic has demonstrated a tendency toward violence, along with a willingness to impede and obstruct the right and lawful function of government and justice, there is no condition or combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community. He should therefore be detained pending trial.

In support of its opposition, the government incorporates the arguments in its previous Motion for Pretrial Detention filed on April 2, 2021, 21-CR-35-3 (EGS), ECF No. 34, and its April 6, 2021 Supplemental Motion for Pretrial Detention, 21-CR-35-3 (EGS), ECF No. 40.

## PROCEDURAL HISTORY

*The Indictment*

On January 29, 2021, a federal grand jury sitting in Washington, D.C. returned an Indictment, charging the defendant Michael John Lopatic, Sr. for his role in the riots at the United States Capitol on January 6, 2021.  The defendant was charged with: one count of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); two counts of Civil disorder, in violation of 18 U.S.C. § 231(a)(3); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); one count of engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); and one count of violent entry and disorderly conduct in a Capitol building, in violation of 40 U.SC. § 5104(e)(2)(F).

*Defendant's Arrest and Proceedings in the Eastern District of Pennsylvania*

The defendant was arrested at his home in Lancaster County, Pennsylvania, on February 3, 2021.  On February 5, 2021, the defendant had his initial appearance in the Eastern District of Pennsylvania, and the United States moved for detention. The government did not appear to articulate, nor did the defendant contest, the basis for a detention hearing under 18 U.S.C. § 3142(f).  Magistrate Judge Richard A. Lloret scheduled a detention a pretrial detention hearing for February 9, 2021.  Prior to the detention hearing, the government filed a Motion for Pretrial Detention.  *United States v. Michael Lopatic*, 21-mj-220, ECF No. 2.  Following a detention hearing on February 9, 2021, Magistrate Judge Henry S. Perkin granted the government's motion for the defendant's detention.  The defendant was committed to the District of Columbia and transferred to the District of Columbia.

- 2 -

*Proceedings in the District of Columbia*

On March 29, 2021, the defendant had his initial appearance in the District of Columbia before Magistrate Judge Zia M. Faruqui.   At that initial appearance, the Assistant Federal Public Defender requested a detention hearing be set for the defendant, and raised the issue that the defendant's detention hearing in the Eastern District of Pennsylvania was for the purpose of transport, and not detention pending trial.   A new detention hearing was set before Magistrate Judge Harvey on April 5, 2021.

On April 2, 2021, the Government filed a Motion in Support of Pretrial Detention requesting the defendant be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2), 21-CR-35-3 (EGS), ECF No. 34, at 1 (hereinafter "April 2nd Motion for Pretrial Detention").   On April 5, 2021, a detention hearing in this matter began before Magistrate Judge G. Michael Harvey. During the hearing, the government reiterated that its basis for requesting a detention hearing was pursuant to 18 U.S.C. § 3142(f)(2) – under provisions (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

Prior to the detention hearing resuming on April 6, 2021, Magistrate Judge Harvey ordered the government in this case, and in *United States v. Kyle Fitzsimons*, 21-CR-158-KBJ, to file supplemental briefing clarifying the legal basis under the Bail Reform Act on which the government relied for its detention request in both matters.   The government filed its Supplemental Motion for Pretrial Detention, 21-CR-35-3 (EGS), ECF No. 40 (hereinafter "April 6th Supplemental Motion"), the same day, prior to the resumption of the detention hearing.   In the April 6th Supplemental Motion, the government clarified that in the instant matter, as well as in *United States v. Clayton Ray Mullins* (1:21-mj-233), the government requested a detention hearing

- 3 -

pursuant to 18 U.S.C. § 3142(f)(2) – under provisions (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.   This is because the government is taking the position that 18 U.S.C. § 111(a)(1) does not constitute a crime of violence.   By contrast, in *United States v. Kyle Fitzsimons*, 21-CR-158 (KBJ), the government moved for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A) because one of the charged offenses in that case is 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers causing Bodily Injury), which constitutes a crime of violence. Additionally, regardless of the basis for the detention hearing, the government argued, detention is appropriate under the factors set out in § 3142(g)." *Id*. at 2-3.

After the government filed its April 6th Supplemental Motion, the detention hearing resumed before Magistrate Judge Harvey.   During the proceedings, the government noted that after further review of the procedural posture of the case and the proceedings in the Eastern District of Pennsylvania, it appeared that the February 9, 2021 detention hearing before Magistrate Judge Perkin was a pretrial detention hearing under the Bail Reform Act, and that the defendant was ruled to be held pending trial.   Magistrate Judge Harvey reviewed the docket in the Eastern District of Pennsylvania and found that the defendant had a detention hearing in the arresting jurisdiction and that the defendant was ruled to be held pending trial. *See* April 6, 2021 Minute Entry for Proceedings held before Magistrate Judge G. Michael Harvey, 21-CR-35-3 (EGS). Magistrate Judge Harvey advised the defendant that he if wished to revoke the arresting jurisdiction's ruling, he may move to revoke that order before Chief Judge Howell.

On April 7, 2021, the government received a copy of the transcript from the defendant's February 9, 2021 detention hearing in the Eastern District of Pennsylvania and provided a copy to

defense counsel.   On April 12, 2021, the defendant filed his motion seeking to revoke Magistrate Judge Perkin's decision.

## ARGUMENT

### 1. A Detention Hearing Was Appropriate because there is a Serious Risk the Defendant Will Obstruct or Attempt to Obstruct Justice.

The Bail Reform Act ("BRA") provides for a detention hearing in one of two ways. First, under certain circumstances related to a defendant's past criminal history at the time the defendant is alleged to have committed the offense or the offense the defendant is alleged to have committed, a rebuttable presumption in favor of detention applies, and the court proceeds directly to the detention hearing to consider whether the defendant has rebutted the presumption, and, if so, whether detention is warranted under the factors in § 3142(g). See § 3142(e)(2)-(3). In that route to a detention hearing—which is not at issue here—the court proceeds directly to the question of whether detention is appropriate under § 3142(g) without considering any factors in § 3142(f). *See, e.g., United States v. Taylor*, 289 F.Supp.3d 55, 63-64 (D.D.C. 2018) (finding the charged offenses "trigger[ed] the presumption," and then considering whether detention was appropriate under § 3142(g) without separately analyzing whether a detention hearing was warranted under § 3142(f); *United States v. Hunt*, 240 F. Supp.3d 128, 133-34 (D.D.C. 2017) (same); *United States v. Muschetta*, 118 F.Supp.3d 340, 343-44 (D.D.C. 2015) (same).

The second way in which a case proceeds to a detention hearing is through § 3142(f). Section 3142(f) states that a "judicial officer shall hold a hearing to determine whether any conditions or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." Such a hearing shall be held upon motion of the government under 18 U.S.C. § (f)(1)

for certain qualifying offenses, none of which is applicable in this case. Under 18 U.S.C. § 3142(f)(2), a hearing shall be held "upon a motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves- (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a perspective witness or juror."

The sole question at the first step under § 3142 is whether the government has established the threshold question of whether "a hearing is appropriate." *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999) (citing 18 U.S.C. § 3142(g)); *see also United States v. Gloster*, 969 F. Supp. 92, 95 (D.D.C. 1997) (holding court can conduct a "fact-sensitive inquiry" into the defendant's long criminal history "only under Sections 3142(e) and (g), that is, after the triggering provisions of Section 3142(f) have been met and detention therefore is available") (emphasis in original). By contrast, at the second step, "the judicial officer must consider several enumerated factors to determine whether conditions short of detention will 'reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id*. (quoting 18 U.S.C. § 3142(g)) (emphasis added); *see also United States v. Ailon-Ailon*, 875 F.3d 1334, 1336-37 (10th Cir. 2017) (setting forth same two-step process).

In the defendant's case, a detention hearing was appropriate because there is a serious risk that the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a perspective witness or juror."   The defendant claims that this case is nearly identical to that of his co-defendant Clayton Mullins, whom Chief Judge Beryl A. Howell ordered released.  *See United States v. Clayton Ray Mullins*, 21-mj-233.  Defendant's Appeal of Detention Order, at 4.  Although Mullins was at the time charged with violations of the same statutes, Defendant Lopatic's conduct, and the evidence against him, is separate and distinct

- 6 -

from Defendant Mullin's conduct.   The Court's detention decision must be made individually based upon the evidence that is before the Court, and here that evidence shows that Defendant Lopatic poses a serious risk of obstruction.   *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *7 (D.C. Cir. Mar. 26, 2021) (citing *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990)).

Contrary to the defendant's claims that no evidence was presented that the defendant would obstruct justice, the evidence of the defendant's serious risk to obstruct justice began the day after the 2020 Presidential election.   Evidence from the defendant's Facebook account directly links his actions on January 6th to his refusal to accept the results of the 2020 Presidential Election and his disgruntled perception of government officials.   On November 4, 2020, immediately following the November election of now-President Joseph R. Biden, Jr. and now-Vice President Kamala Harris, the defendant posted to social media that the election was a "Call to Arms."   He also posted a photograph of two dead pheasants, apparently shot by the defendant.   In the caption, he noted that he named the dead birds "Joe and Kamala," a clear reference to President Joseph Biden and Vice President Kamala Harris.

*Exhibit 1*



*Exhibit 2*



These two social media postings indicate the defendant's intent – to literally call others to arms – in response to the election.  As discussed in the Government's April 2nd Motion for Pretrial Detention, in the weeks following the November election, the defendant posted more violent

- 8 -

photographs of birds he shot and killed, and linked those birds to current Democratic congressional leaders, including then-Senate Minority Leader Chuck Schumer, the Speaker of the House of Representatives Nancy Pelosi, and Representatives Adam Schiff and Jerry Nadler, both of whom acted as Impeachment managers during the Impeachment of President Donald J. Trump.

*Exhibit 3*



*Exhibit 4*



**Michael J. Lopatic**
November 6, 2020 · 🌐

Another good flush for this pup.  I got her while going low running her
mouth.  I called this old bird Nancy.



*Exhibit 5*



These photographs are not just violent or offensive – they show the defendant's statement

of mind with respect to the 2020 Presidential election, and are a harbinger of his actions to obstruct

the peaceful transition of power and the functioning of a democratically elected government.   Lest

there be any ambiguity about the defendant's intent on January 6th, 2021, days before he traveled

to Washington, D.C., the defendant on Facebook and advocated for others to "ASSEMBLE ON

THE CAPITAL JANUARY 6, 2021," and pledged, "UNITED WE STAND, GO FORTH AND WE FIGHT."

*Exhibit 6*



Starting on January 6, 2021, the defendant's stated intent to obstruct the election and democratic government evolved into actions designed to obstruct not just the election results and the government, but also the judicial system.   Indeed, the defendant trespassed across the U.S. Capitol Grounds and assaulted officers in an attempt to obstruct the election – and then stole the body worn camera of another police officer and disposed of it, destroying what would have undoubtedly been a crucial piece of evidence.   The video evidence submitted in the April 2nd

Motion for Pretrial Detention, and incorporated herein, shows that the defendant's actions in stealing the bodyworn camera were both premeditated and deliberate.   That the defendant had the foresight to traverse an angry mob to take what would have been a crucial piece of evidence in bringing those who attacked the officers – and the Capitol – to justice shows that he was not merely swept up by the passions of the day.

This evidence, specifically (1) social media statements showing the defendant traveled to the U.S. Capitol on January 6th to fight the results of the 2020 Presidential Election, (2) social media statements showing his disdain and disregard for current government officials; (3) his willingness to act violently to obstruct the government from carrying out the election results; (4) his actions to steal an invaluable piece of evidence that could be used to prosecute rioters, including himself, from January 6th; and (5) his decision to dispose of that stolen bodyworn camera – rather than return it to law enforcement, or even wait to provide it to a lawyer, shows that the defendant poses a serious risk of obstructing justice.   Accordingly, it was appropriate for a detention hearing to held, pursuant to § 3142(f)(2)(B) because there is a serious risk the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a perspective witness or juror."

2.   **The Basis for Detention Hearing in the First Instance Does Not Constrain the Court's Consideration of the Factors Under § 3142**

Under the Bail Reform Act, whatever the basis for the defendant's detention hearing, § 3142's plain language not only permits but requires the Court to consider the full panoply of factors under § 3142(g) in determining whether to release or order detained a defendant. *See* § 3142(g) (noting that the judicial officer "shall . . . take into account" the § 3142(g) factors).   As discussed in the April 6th Supplemental Motion, at 2-3, although the government is not seeking a hold pursuant to

18 U.S.C. § 3142(f)(1)(A) [Crime of Violence], it still must argue the appropriate factors under § 3142(g).   Indeed, once the government has established a circumstance "triggering a detention hearing," the court "must consider the enumerated factors" in § 3142(g). *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).   In *United States v. Michael Thomas Curzio*, 21-CR-041, Judge Carl J. Nichols considered whether the plain text of the Bail Reform Act limits a judge from considering the enumerated factors in § 3142(g), and held that Section 3142(g) contains no language limiting the consideration of those factors to hearings held only under subsection (f)(1), subsection (f)(2) or vice versa.   In holding the defendant, Judge Nichols stated, "I, therefore, conclude that either (f)(1) or (f)(2) is satisfied, and as I've said here, I believe (f)(2) was satisfied, that I'm required to examine all of the Section 3142(g) factors without regard to which subsection initially led the magistrate judge properly in my view to hold the detention hearing." *See Exhibit 6,* Transcript of Video Motion Hearing Before the Honorable Carl J. Nichols, *United States v. Michael Curzio*, 21-CR-41, at 26 – 27.   Accordingly, it is appropriate for the Court here to consider the § 3142 (g) factors in determining whether to held the defendant.

**3. A Consideration of the § 3142(g) Factors Shows the Defendant Should Remain Held**

As the government discussed in its April 2nd Motion for Pretrial Detention, there are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g). The government incorporates its arguments here in, and submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.   While his medical

conditions may be serious and should receive appropriate treatment, his medical conditions did not prevent him from traveling from Pennsylvania to DC, rallying his associates to do the same, navigating an intense crowd to the forefront of the police line, assaulting an officer, then making his way through the crowd to go and take the BWC of another officer

## **CONCLUSION**

The defendant has demonstrated a tendency toward violence and a willingness to impede and obstruct the right and lawful function of government and justice.   Considering all of the factors set forth above in light of the substantial sentence the defendant faces, there is no combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community.   He should therefore be detained pending trial.

WHEREFORE, the government respectfully requests the Court deny the Defendant's Appeal of Detention Order.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

By:     */s/   Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney
DC Bar No. 1012458
555 4th Street, N.W., Room 9842
Washington, D.C. 20530
(202) 252-2646
Colleen.Kukowski@usdoj.gov

- 15 -

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.


 */s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney


Date: April 19, 2021