# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Case No. 21-CR-35 (EGS)** |
| **v.** | : | |
| | : | |
| **MICHAEL JOHN LOPATIC, SR.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## DEFENDANT'S REPLY REGARDING APPEAL OF DETENTION ORDER

Defendant Michael J. Lopatic, Sr. ("Mr. Lopatic"), by and through undersigned counsel, respectfully submits this Reply to the Government's Response to Mr. Lopatic's Appeal of the Detention Order by the Magistrate Judge from the Eastern District of Pennsylvania.  In its Response, the Government contends that there is a serious risk that Mr. Lopatic will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror, *see* Gov. Response, at 5, and requests that the Court consider all factors under 18 U.S.C. § 3142(g), including the nature and seriousness of the danger to any person or the community, despite the fact that Mr. Lopatic has not been charged with a crime of violence. *Id.*, at 13.  As set forth in detail below, there is no evidence to suggest that Mr. Lopatic will obstruct or attempt to obstruct justice or threaten or intimidate anyone, let alone potential witnesses or jurors.  Further, since Mr. Lopatic has not been charged with a violent offense no consideration should be given to his purported dangerousness to the community.

I.     **ARGUMENT**

   **1.     There is no Risk that Mr. Lopatic Will Obstruct or Attempt to Obstruct Justice.**

Under 18 U.S.C. § 3142(f)(2), a hearing shall be held "upon a motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a perspective witness or juror." The Government asserts that Mr. Lopatic's conduct, and the evidence against him, is separate and distinct from his co-defendant Clayton Mullins' conduct, and as such, Ms. Lopatic allegedly poses a serious risk of obstruction. *See* Gov. Response, at 6. The Government, however, does not make any attempts to distinguish Mr. Lopatic's conduct from Mr. Mullins' conduct. Instead, the Government reiterates a couple of Facebook posts which allegedly show "his refusal to accept the results of the 2020 Presidential Election and his disgruntled perception of government officials". *Id.*, at 7.

Mr. Lopatic supported former President Donald J. Trump, he is a hunter,[1] and sometimes, he shared his opinions with his friends on Facebook. His political views and hobbies are not linked to his actions on January 6th; they are also protected by the First and Second Amendments of the U.S. Constitution. On January 6th, Mr. Lopatic travelled to the District of Columbia with his wife to attend a protest in support of President Trump. He was unarmed, he had no zip ties, and he wore casual clothes—he did not take any prior actions which would indicate that he intended to harm anyone or engage in any illegal conduct on January 6th. Indeed, after spending

---

[1] Mr. Lopatic rejects the Government's proposition that any photographs from his hunts are "violent or offensive". *See* Gov. Response, at 11. Hunting pheasants is perfectly legal and many people in the U.S. and worldwide, including Mr. Lopatic, enjoy hunting as a hobby. It has no probative value.

some time at the rally earlier in the day, Mr. Lopatic and his wife went for a walk before they accidentally ended up at the Capitol when they were on their way back to their hotel.

Nonetheless, none of his actions, before or after that date, suggest that Mr. Lopatic will obstruct or attempt to obstruct justice, and the Government does not appear to offer any evidence to the contrary.  The Government's sole argument in support of their allegations are Mr. Lopatic's actions on January 6th—his actions which led to the instant charges against him.  These actions alone, however, are not sufficient to support a finding that Mr. Lopatic will obstruct or attempt to obstruct justice. *See, e.g., United States v. Klein*, Crim. No. 21-236 (JDB), at 26 (D. D.C. April 12, 2021) (ordering the defendant released pending trial, *inter alia*, because of his "lack of efforts to obstruct the FBI's investigation"); *see also United States v. Munchel*, Case No. 1:21-cr-118-RCL, at 9 (D. D.C. February 17, 2021) (Court rejected Government's argument that Munchel took actions consistent with obstruction when he turned his cell phone over to a friend).

Further, there is no risk that Mr. Lopatic would threaten or intimidate potential witnesses or jurors in this case for the simple reason that he resides in Lancaster, Pennsylvania, and any jurors would reside in the District of Columbia.  To further ease any potential concerns, this Court could impose conditions restricting his access to the internet, restricting his movement outside his home area or even impose house arrest.  There are ways short of incarceration, to bar any travel to the District of Columbia outside of Court proceedings.

2.   **Mr. Lopatic Has Not Been Charged with a Violent Crime and No Consideration Should be Given to His Purported Dangerousness to the Community.**

The Government claims that although it is not seeking detention pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence], it still must argue the appropriate factors under § 3142(g). *See* Gov. Response, at 13-14.  In support of their contention, the Government cites to *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) and the transcript of the detention hearing in

*United States v. Michael Thomas Curzio*, 21-CR-041 (March 9, 2021).  However, in *Singleton,* the defendant's offense did not trigger the Government's right to a detention hearing, and in *Curzio* the Government presented sufficient evidence to trigger a detention hearing.

In *Singleton*, the D.C. Circuit found that Congress "did not include possession of a firearm by a felon within the category of offenses triggering the government's right to a detention hearing under 3142(f)(1)", and the defendant has, therefore, "not been charged with a crime of violence warranting pretrial detention". *Singleton*, 182 F.3d at 16.  In *Curzio*, the Court found that "[t]he government at the detention hearing presented sufficient evidence that Mr. Curzio was a flight risk . . . warranting detention." *Curcio*, 21-CR-041, at 25.

Similarly, in this Court's recent opinion in *United States v. Jack Wade Whitton*, 21-35-5 (EGS) (April 20, 2021), this Court found that Mr. Lopatic's co-defendant[2], Mr. Whitton, was eligible for pretrial detention because he was charged with a crime of violence. *Id*., at 13-14. Simply put, the circumstances surrounding Mr. Lopatic are completely different from those of Mr. Whitton.  Mr. Lopatic is not and never has been a white supremacist (in fact, his wife is Laotian).  He has no involvement with any organized right-wing or militia groups.  He has no prior record.  His involvement in the January 6th events, while serious, was fleeting.  He has not been charged with a crime of violence.

In this case, the Government simply presumes that a detention hearing was appropriate and seeks to submit evidence of Mr. Lopatic's alleged danger to the community in support of its finding that Mr. Lopatic will obstruct or attempt to obstruct justice.  As discussed in detail in Mr.

---

[2] Although Mr. Lopatic is joined in the same Indictment as Mr. Whitton, it must be noted that Mr. Lopatic does not know Mr. Whitton, had not communicated with Mr. Whitton and was not working with Mr. Whitton on January 6th.  It is not known why these two individuals are listed on the same Indictment.  Mr. Lopatic may move to sever his case from that of Mr. Whitton at the appropriate time.

Lopatic's brief in support of his appeal, in *United States v. Clayton Ray Mullins* (1:21-mj-233), Chief Judge Beryl A. Howell rejected the government's attempt to do an end-run around § 3142 by employing § 3142(f) to detail a defendant pre-trial.  Detention until trial may be imposed when a judicial officer finds one of six circumstances triggering a detention hearing. *See* 18 U.S.C. § 3142(f).  Absent one of these circumstances, detention is not an option. *See*, *e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988).  In this case, it is clear that detention is not an option because Mr. Lopatic has not been charged with a violent offense and there is no evidence to support the Government's allegation that he will obstruct or attempt to obstruct justice.

There are other reasons to conclude that Mr. Lopatic is not a danger to the community. The events of January 6th, as noted in Mr. Lopatic's initial appeal, are unlikely to ever be repeated. Prior to January 6th, he had been led to believe that Donald Trump had won the election by the President himself, a variety of political leaders and a supporting caste of media personalities.  He now knows the propaganda he heard to be false.  At the time he engaged police officers (a decision he deeply regrets), Mr. Lopatic had been told by someone in the crowd that a sixteen-year-old girl had been shot and killed by the police.  In this confusion, significant errors in judgment occurred, but they are inconsistent with the lifetime of service Mr. Lopatic had previously demonstrated.

Furthermore, as discussed in detail in Mr. Lopatic's brief in support of his appeal and as further evidenced by his medical records, Mr. Lopatic is a very sick man.  He has been diagnosed with Pituitary Macroadenoma, visual changes, paresthesia, ocular headaches, memory difficulty, intermittent urinary retention, Post-Traumatic Stress Disorder (100% disability), Tinnitus, degenerative joint disease (arthritis) in his right shoulder, both knees, left hand, cervical spine, and lumbosacral spine, HNPL5S1 with moderate neural foraminal stenosis, liver fatty

infiltration, non-obstructing bilateral renal calculi (kidney stones), rib fracture, hypertension, hyperlipidemia, lipomas, COVID-19, Vitamin D deficiency, hemorrhoids, gout, migraines, sigmoid diverticulosis, obstructive sleep apnea, breast mass, chronic pain, BPH (enlarged prostate), anal fissure, ganglion cyst in the left waist, superficial venous thrombosis and deep vain thrombosis, pulmonary embolism, history of MRSA, tenosynovitis in the left waist, dysmetabolic syndrome, hypogonadism, myalgias/elevated CPK, THS deficiency, actinic keratosis, history of meningitis, hearing loss with bilateral hearing aids, and carpal tunnel syndrome in the right hand.

For his numerous health concerns, Mr. Lopatic has been prescribed cabergoline, duloxetine, ergocalciferol, synthroid, cyclobenzaprine, rivaroxaban, and trazodone.  It is clear that he has significant medical and psychological issues which tie him to his community in Lancaster[3].  As such, Mr. Lopatic does not pose a flight risk.

## II.    CONCLUSION

For the foregoing reasons, Defendant Michael J. Lopatic, Sr., respectfully requests that this Honorable Court order his release.

Respectfully Submitted,

*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire
Blerina Jasari, Esquire
Attorneys-at-Law
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036

---

[3] There are nearly 2,000 pages of medical records which exist for Mr. Lopatic and which have not been attached to this Reply as they contain confidential patient information.  If the Court wishes to review Mr. Lopatic's medical records, they can be provided for the Court's *in camera* review.  Defense counsel has informed the D.C. Department of Corrections of Mr. Lopatic's medical and psychological needs; however, it is believed that if he is permitted to return home so that he can resume treatment at the Lebanon, Pennsylvania Veterans Administration hospital, he can receive appropriate treatment.

Email: dboyle@dennisboylelegal.com
bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Counsel for Defendant*